## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RAO S. MANDALAPU, MD.                 :
2300 Old Spanish Trl., Apt. 2048      :
Houston, TX 77054                     :
                                      :    CIVIL ACTION
        Plaintiff,                    :
                                      :    CASE NO.: _____
        v.                            :
                                      :
TEMPLE UNIVERSITY HOSPITAL, INC.      :
3401 N. Broad St.                     :
Philadelphia, PA 19140                :
        and                           :    **JURY TRIAL DEMANDED**
DR. JACK H. MYDLO                     :
c/o Temple University Hospital, Inc.  :
3401 N. Broad St.                     :
Philadelphia, PA 19140                :
        and                           :
DR. ROBERT GUY UZZO                   :
c/o Temple University Hospital, Inc.  :
3401 N. Broad St.                     :
Philadelphia, PA 19140                :
        and                           :
DR. RICHARD E. GREENBURG              :
c/o Temple University Hospital, Inc.  :
3401 N. Broad St.                     :
Philadelphia, PA 19140                :
        and                           :
DR. DAVID Y.T. CHEN                   :
c/o Temple University Hospital, Inc.  :
3401 N. Broad St.                     :
Philadelphia, PA 19140                :
        And                           :
DR. ALEXANDER KUTIKOV                 :
c/o Temple University Hospital, Inc.  :
3401 N. Broad St.                     :
Philadelphia, PA 19140                :
        And                           :
DR. ROBERT S. CHARLES                 :
c/o Temple University Hospital, Inc.  :
3401 N. Broad St.                     :
Philadelphia, PA 19140                :
        and                           :
DR. STEVEN J. HIRSHBERG               :

c/o Temple University Hospital, Inc.            :
3401 N. Broad St.                               :
Philadelphia, PA 19140                          :
    And                     :
DR. YAN F. SHIBUTANI                            :
c/o Temple University Hospital, Inc.            :
3401 N. Broad St.                               :
Philadelphia, PA 19140                          :
                                           :
    Defendants.             :
_____        :

## CIVIL ACTION COMPLAINT

Plaintiff, Rao S. Mandalapu, MD. (*hereinafter* referred to as "Plaintiff" unless indicated otherwise) hereby complains as follows against Temple University Hospital, Inc. and Dr. Jack H. Mydlo, Dr. Robert Guy Uzzo, Dr. Richard E. Greenberg, Dr. David Y.T. Chen, Dr. Alexander Kutikov, Dr. Robert S. Charles, and Dr. Steven J. Hirshberg, and Dr. Yan F. Shibutani (*hereinafter* collectively referred to as "Defendants" unless otherwise indicated), and avers as follows:

## INTRODUCTION

1.      Plaintiff initiates the instant action to redress violations by Defendants of for violations of 42 U.S.C. § 1981 and Pennsylvania common law. As a result of Defendants' unlawful actions, Plaintiff has suffered the damages as set forth herein.

## JURISDICTION AND VENUE

2.      This Court, in accordance with 28 U.S.C. §§ 1331, has jurisdiction over Plaintiff's claims because this civil action arises under a law of the United States. This court also has supplemental jurisdiction over Plaintiff's state law claims because they arise from a common nucleus of operative fact.

3.     This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

4.     Venue is properly laid in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), because Defendants conduct business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## PARTIES

5.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6.     Plaintiff is an adult individual, with an address as set forth in the caption.

7.     Defendant Temple University Hospital, Inc. ("Defendant TUH") is an entity located at the above-captioned address providing medical, hospital, emergency, surgical and general health-care services.

8.     Defendant Dr. Jack Mydlo ("Defendant Mydlo") is a medical doctor, Chairman, and Program Director for Defendant TUH and Defendant TUH's Residency Program. Dr. Jack Mydlo controlled the terms and conditions of Plaintiff's employment with Defendant TUH, which included but was not limited to evaluating Plaintiff's performance, issuing him performance evaluations, promoting him to next level residency, and terminating his employment.

9.     Defendant Dr. Robert Guy Uzzo ("Defendant Uzzo"), is a medical doctor and Chairman of the Department of Surgery at Fox Chase Cancer Center – Temple Health in Philadelphia PA, where Plaintiff was assigned at a certain point during his residency with Defendant TUH. Upon information and belief, Defendant Uzzo had control over the terms and conditions of Plaintiff's employment with Defendant TUH, which included but was not limited to evaluating Plaintiff's performance, issuing him performance evaluations, and participating in the decision to terminate Plaintiff.

10.     Defendant Dr. Richard E. Greenberg ("Defendant Greenberg"), is a medical doctor and Chief of Urologic Oncology at Fox Chase Cancer Center – Temple Health in Philadelphia PA, where Plaintiff was assigned at a certain point during his residency with Defendant TUH. Upon information and belief, Defendant Greenberg had control over the terms and conditions of Plaintiff's employment with Defendant TUH, which included but was not limited to evaluating Plaintiff's performance, issuing him performance evaluations, and participating in the decision to terminate Plaintiff.

11.     Defendant Dr. David Y.T. Chen ("Defendant Chen"), is a medical doctor and an Associate Professor in Urologic Oncology at Fox Chase Cancer Center – Temple Health in Philadelphia PA, where Plaintiff was assigned at a certain point during his residency with Defendant TUH. Upon information and belief, Defendant Chen had control over the terms and conditions of Plaintiff's employment with Defendant TUH, which included but was not limited to evaluating Plaintiff's performance, issuing him performance evaluations, and participating in the decision to terminate Plaintiff.

12.     Defendant Dr. Alexander Kutikov ("Defendant Kutikov"), is a medical doctor and an Associate Professor in Urologic Oncology at Fox Chase Cancer Center – Temple Health in

Philadelphia PA, where Plaintiff was assigned at a certain point during his residency with Defendant TUH. Upon information and belief, Defendant Kutikov had control over the terms and conditions of Plaintiff's employment with Defendant TUH, which included but was not limited to evaluating Plaintiff's performance, issuing him performance evaluations, and participating in the decision to terminate Plaintiff.

13. Defendant Dr. Robert S. Charles ("Defendant Charles"), is a medical doctor and Surgeon-in-Chief, Division of Urology at Abington Memorial Hospital and is on staff at Fox Chase Cancer Center – Temple Health in Philadelphia PA, where Plaintiff was assigned at a certain point during his residency with Defendant TUH. Upon information and belief, Defendant Charles had control over the terms and conditions of Plaintiff's employment with Defendant TUH, which included but was not limited to evaluating Plaintiff's performance, issuing him performance evaluations, and participating in the decision to terminate Plaintiff.

14. Defendant Dr. Steven J. Hirshberg ("Defendant Hirshberg"), is a medical doctor and Chief of Male Reproductive Medicine at Urology Health Specialists, LLC affiliated with Abington Memorial Hospital and Fox Chase Cancer Center – Temple Health in Philadelphia PA, where Plaintiff was assigned at a certain point during his residency with Defendant TUH. Upon information and belief, Defendant Hirshberg had control over the terms and conditions of Plaintiff's employment with Defendant TUH, which included but was not limited to evaluating Plaintiff's performance, issuing him performance evaluations, and participating in the decision to terminate Plaintiff.

15. Defendant Dr. Yan F. Shibutani ("Defendant Shibutani"), is a medical doctor and Board Certified Urologist at Urology Health Specialists, LLC affiliated with Abington Memorial Hospital and Fox Chase Cancer Center – Temple Health in Philadelphia PA, where Plaintiff was

assigned at a certain point during his residency with Defendant TUH. Upon information and belief, Defendant Shibutani had control over the terms and conditions of Plaintiff's employment with Defendant TUH, which included but was not limited to evaluating Plaintiff's performance, issuing him performance evaluations, and participating in the decision to terminate Plaintiff. [1]

16.     At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FACTUAL BACKGROUND

17.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

18.     Plaintiff is an adult male who was born in India and has a discernable Indian accent.

19.     Plaintiff is a Board-certified surgeon in India.

20.     Plaintiff began his carrier in medicine in the United States as a transplant fellow at the University of Florida.

21.     Plaintiff has desired to become a certified urologic physician with the American Board of Urology.

22.     In order to become a certified urologic physician, a candidate must successfully complete five (5) clinical years of post-graduate medical training with a urology residence

---

[1] Defendant Mydlo, Defendant Uzzo, Defendant Greenberg, Defendant Chen, Defendant Kutikov, Defendant Charles, Defendant Hirshberg, and Defendant Sibutani are *hereinafter* collectively referred to as "Defendant Individuals," unless indicated otherwise.

program that is accredited by the Accreditation Council for Graduate Medical Education ("ACGME").[2]

23.     Post-graduate clinical years will *hereinafter* be referred to as PGY-1 through PGY-5.

24.     Furthermore, in order to become a certified urologic physician, Plaintiff needed to complete PGY-4 and PGY-5 at the same ACGME accredited program.

25.     Plaintiff successfully completed PGY-1 through PGY-3 with ACGME accredited urology residency programs.

26.     On or about May 9, 2011, Plaintiff signed a contract with Defendant TUH to be a categorical PGY-4 urology resident for the academic year 2011/2012 at Defendant TUH's ACGME accredited urology Residency Program.

27.     ACGME defines categorical resident as a resident who enters a program with the objective of completing the entire program.

28.     ACGME explains that residency is a unique hybrid of employment and academic relationships akin to an apprenticeship and is contractual in nature. The status of a categorical resident, in particular, carries a well understood and reasonable commitment that, absent good cause, the residency agreement would be honored and renewed each year until the completion of the residency training program. Thus by accepting a residency position with Defendant TUH's Residency Program, Plaintiff was assured that with his work ethic and talents, he would graduate from the residency program and be well on his way to a successful career in urology.

29.     Defendant TUH's aforesaid program admitted two categorical urology residents for the academic year 2011/2012. Both residents share responsibilities equally including after

---

[2] ACGME is a non-profit private counsel responsible for accrediting graduate medical training programs (including but not limited to internships, residencies, fellowships, and subspecialty residencies) for physicians in the United States.

hour call schedules, emergency management, academic assignments, and clinical responsibilities assigned to the level of training year (in this instance PGY-4).

30.     The other categorical resident that was hired with Plaintiff was a Caucasian American male.

31.     During the course of his employment with Defendant TUH, Plaintiff was supervised by Defendant Individuals; however, Plaintiff primarily reported to Defendant Mydlo, as he was Defendant TUH's Residency Program Director.

32.     While employed with Defendant TUH as a PGY-4 resident, Plaintiff distinguished himself as a very dedicated and hard-working resident who performed well academically and did not exhibit any disciplinary concerns. In fact, Defendant Mydlo has openly appreciated Plaintiff's academic achievements and has admitted that Plaintiff is a hard-working physician who exhibits professionalism in his practice.

33.     Plaintiff's academic achievements include but are not limited to: (1) submitting clinical urology research study results as a primary author to a national conference, which was accepted for presentation in October 2011; (2) submitting clinical research abstracts which were accepted for presentation in national and international conferences; (3) authoring four book chapters as a primary author in urology; (4) authoring several peer reviewed publications in urology; (5) submitting National Institute of Health ("NIH") research grant proposal as a principal investigator on prostate cancer, which was reviewed by the NIH scientific committee; and (6) receiving the highest score on the American Urological Association National Annual In-Service Examination in Defendant TUH's urology residency program for the academic year 2011/2012.

34.     While employed as a PGY-4 categorical resident with Defendant TUH, Plaintiff performed and/or was actively involved in approximately 644 urological surgical procedures on approximately 377 patients with the entire faculty at Defendant TUH's urology residency program during the 2011/2012 academic year.

35.     Plaintiff also attended every academic conference at Defendant's TUH urology residency program for the academic year 2011/2012, including weekly didactic conferences, pathology conferences, combined morbidity and mortality conferences, multidisciplinary conferences, monthly Journal Clubs, and pediatric urology conferences.

36.     Despite Plaintiff's academic and work achievements, Plaintiff was subjected to discriminatory treatment by Defendant Individuals, because of his race, ancestry, ethnic and linguistic characteristics, including but not limited to being subjected to discriminatory comments and jokes about his accent and being openly told by Defendant Mydlo that the other Defendant Individuals were hesitant to have him work with their patients because of his accent.

37.     Upon information and belief, in or about April of 2012, the academic faculty and faculty from affiliated hospitals met to discuss resident promotions for the academic year 2012/2013 and as a result of such discussions, Plaintiff was promoted to a PGY-5 resident within Defendant TUH's urology residency program.

38.     On or about April 30, 2012, Plaintiff and Defendant Mydlo signed a PGY-5 contract for the 2012/2013 academic year.

39.     Defendant TUH's Graduate Medical Education ("GME") policies and procedures, specifically, TUH GME 201 [Formally TUHRAC – 201] Title: Guidelines for Resident Evaluation, Promotion, and Dismissal, Policy and Procedure #4 states: "A resident shall be

promoted to the next year of training or graduated from the program only when s/he has been judged to have successfully fulfilled the requirements for the current level of training."

40.     At no point in time prior to offering Plaintiff a PGY-5 contract for the 2012/2013 academic year did any member of management from Defendant TUH (including Defendant Indiviudals) inform Plaintiff that he had any performance problems.

41.     Furthermore, Plaintiff was never issued any discipline for his performance and was never even given a performance evaluation prior to May of 2012 (after he had already been offered and accepted employment with Defendant TUH for the academic year 2012/2013 as a PGY-5 resident).

42.     On or about May 15, 2012, Defendant Mydlo submitted evaluations for Plaintiff for the rotation from July 2011 to October 2011; however, such evaluations were entirely pretextual.

43.     Upon information and belief, Defendant Mydlo did not submit any evaluations for Plaintiff's co-resident, a Caucasian American male who was at the same level of training as Plaintiff for the academic year 2011-2012.

44.     On or about May 24, 2012, Defendant Mydlo requested to meet with Plaintiff to discuss Plaintiff's quarterly evaluation. During this meeting, Defendant Mydlo handed Plaintiff a document, which stated "quarterly evaluation" and briefly explained to Plaintiff *__for the first time__* since his hire that his performance was allegedly sub-par compared to his co-resident and therefore could not promote him to the next level.

45.     May 24, 2012 was the *__first time__* Plaintiff was actually issued a performance evaluation by Defendant Mydlo.

46.     Upon information and belief, other faculty members also submitted similar evaluations in the month of May 2012 for the rotations held between the months of July of 2011 through June of 2012. Again, Plaintiff was not issued any of these evaluations before May 24, 2012.

47.     Plaintiff was issued the aforesaid evaluations in violation of Defendant TUH's GME policies and procedures, which provide that resident evaluations should be documented on a quarterly basis (not on a one-time basis nearing the end of a resident's PGY-4 residency term).

48.     Furthermore, Defendant TUH's management, including Defendant Mydlo, did not provide Plaintiff with any warning or opportunity to discuss his alleged performance deficiencies with Defendants as provided in Defendant TUH's GME policies and procedures, specifically TUH GME – 201 [Formally TUHRAC – 201], Title: Guidelines for Resident Evaluation, Promotion, Dismissal, Policy and Procedure #5, which provides

> Warning refers to the notification of the resident that his/her performance or progress has been judged to be unsatisfactory. A discussion should occur with the resident about the unsatisfactory performance and the resident should be counseled as to the steps necessary to correct the unsatisfactory performance. The discussion should identify the consequences of continued unsatisfactory performance. There should be written documentation in the resident's file that the warning and counseling have occurred. Programs are encouraged to provide the warning in a written notice to the resident that includes the reasons for the warning, the recommendations for correction of deficiencies, and the consequences of continued unsatisfactory performance.

49.     Plaintiff was also issued the aforesaid evaluations in violation of the ACGME Program Requirements for Graduate Medical Education in Urology Policies. Section V.A.2a of said policies relating to evaluations of residents provides that "The faculty *must* evaluate a resident's performance in a timely manner during each rotation or similar education assignment, and document this evaluation at the completion of the assignment."

50.     Plaintiff was also issued the aforesaid evaluations in violation of the ACGME Program Requirements for Graduate Medical Education in Urology Policies. Section V.A.2b of said policies relating to evaluations of residents provides that "The program must provide objective assessment of competencies."

51.     Defendant TUH and its teaching faculty, including but not limited to Defendant Individuals clearly ignored Defendant TUH's and ACGME's policies and procedures when pretextually issuing Plaintiff negative performance evaluations in May of 2012.

52.     Plaintiff was not given opportunity to write a response to the adverse evaluations in violation of Defendant TUH's GMEC- 201 [formally TUHRAC – 201] Title: Guidelines for Resident Evaluation, Promotion, and Dismissal – Policy and Procedures 3, which specifically provides: "In the event of an adverse evaluation, the resident shall be given the opportunity to write a response to the adverse evaluation and have it added to the file."

53.     In addition to refusing to follow their own policies and procedures, Defendants also refused to follow ACGME's Program Requirements for Graduate Medical Education in Urology relating to resident evaluations under Section V.A.1.b(1), which provides that the Clinical Competency Committee ("CCC") should review all resident evaluations semi-annually. During his entire academic year with Defendant TUH, Defendant TUH's urology residency program's CCC never met with Plaintiff to discuss his evaluations.

54.     As a result of his May 2012 performance evaluations, Plaintiff was denied credit for the academic year 2011/2012 and denied promotion to a PGY-5 resident[3], despite the fact that upon information and belief, Plaintiff's skills, talent, and achievements were superior to that

---

[3] Even though he had already been promote in April of 2012 when he signed a PGY-5 contract with Defendant TUH.

of his co-resident (a Caucasian American with no accent), who was given credit and promoted to PGY-5.

55.     Prior to being issued his aforesaid May 2012 performance evaluations, Plaintiff had complained to Defendant TUH's management, including but not limited to Defendant Mydlo, about the discriminatory behavior that he was being subjected to because of his race and ethnic/linguistic characteristics (particularly his accent) – as discussed *supra*.

56.     After being issued his May 2012 pretextual performance evaluations, Plaintiff continued to complain to Defendant TUH's management, including but not limited to Defendant Mydlo, that he believed he was being discriminated against because of his race and ethnic/linguistic characteristics and that he wanted the same to cease.

57.     In June of 2012, by way of a letter dated June 6, 2012, Plaintiff was informed by Defendant Mydlo that he was terminated from Defendant TUH's residency program allegedly due to poor performance and without due process of written warning, remediation, and probation.

58.     TUH GME urology resident manual states, "No resident will be terminated without remediation".

59.     Plaintiff was terminated from Defendant TUH abruptly and without remediation allegedly due to poor performance issues; however, Defendant Mydlo had previously informed Plaintiff that things were not working out because of his accent and that he and the other Defendant Individuals were concerned about his [Plaintiff's] accent.

60.     Defendant Mydlo threatened Plaintiff that if he complained about discriminatory evaluations and his [Defendant Mydlo's] decision to terminate Plaintiff's residency to any grievances committee or by way of a lawsuit, that it would be the end of Plaintiff's career and

that Plaintiff should have a reason to believe already what he can do based on his termination of Plaintiff's PGY-5 contract without cause.

61.      In or about July of 2012, Plaintiff complained to Defendant TUH's DIO, Susan Coull, about Defendant TUH's and Defendant Individuals' violations of ACGME and Defendant TUH's GME policies and procedures as well as the discriminatory behavior that he was subjected to during his PGY-4 residency with Defendant TUH.

62.      Despite the fact that Plaintiff was informed that he was being terminated and not promoted to PGY-5, DIO of Defendant TUH, Susan Coull suggested to Plaintiff that he should resign from Defendant TUH GME residency program, in exchange for a letter of recommendation.

63.      Because of (1) Defendant Mydlo threats (as discussed *supra*); (2) the pressure he was receiving to resign (although he had already been terminated); and (3) Defendants' obvious refusal to adhere to their own policies and/or the policies of ACGME, Plaintiff made the decision to submit a resignation letter in exchange for a positive letter of recommendation.

64.      On or about August 10, 2012, Defendant Mydlo sent Plaintiff an e-mail stating "Rao, You may submit the resignation letter as I promised I said I would write a letter for you in support of a new position."

65.      In response to Defendant Mydlo's August 10, 2012 e-mail, Plaintiff responded by submitting a formal resignation letter as instructed by Coull and Defendant Mydlo on August 13, 2012 via e-mail.

66.      After receiving his August 13, 2012 e-mail, Defendant Mydlo advised Plaintiff on August 14, 2012 to edit the resignation letter to the way he wanted it written.

67.     Plaintiff revised his resignation letter as asked and submitted it to Defendant Mydlo (and copied it to Coull) on August 16, 2012.

68.     To date, Defendant Mydlo has never provided Plaintiff with a positive recommendation letter in exchange for his resignation letter, as agreed upon in August of 2012.

69.     Since his discriminatory and pretexual termination from Defendant TUH (discussed *supra*), Plaintiff's applications for urology residency programs have been rejected.

70.     Upon information and belief, Plaintiff's applications for urology residency programs have been rejected since August of 2012 because of the negative feedback that Defendant Mydlo has been providing to such potential programs.

71.     Furthermore, as a result of his discriminatory and retaliatory termination from Defendant TUH's residency program, Plaintiff has been unable to get certified as a urologic physician due to the fact that he was unable to complete his PGY-4 and PGY-5 within the same ACGME accredited program (and thereby limiting his earning potential and job prospects).

72.     Defendant Mydlo, since then has intentionally retaliated against Plaintiff by not responding to emails requesting letters of recommendation, which is mandatory to complete the application process while applying for residency programs.

73.     On or about July 13, 2013, Defendant Mydlo intentionally reported to the Federation of State Medical Boards ("FSMB/FCVS")[4] false and defamatory information in order to cause Plaintiff humiliation, damage to his professional character and reputation, and emotional distress. Such false and defamatory information has also undoubtedly limited Plaintiff's ability to obtain employment as well as his medical license to practice medicine in the United States.

---

[4] The FSMB/FCVS *(*Federation Credentials Verification Service) is a national non-profit organization representing 70 medical and osteopathic boards on the United States. FSMB/FCVS was established in September 1996 to provide a centralized, uniform process for state medical boards to obtain a verified, primary-source record of a physician's core medical credentials.

74.    Specifically, Defendant Mydlo reported to the FSMB/FCVS that Plaintiff was a PGY-1 resident (training level 1) for the academic year 2011/2012 and that Plaintiff was placed on probation while participating in the TUH urology residency program during the 2011/2012 academic year, statements which are both completely false.

75.    Plaintiff was made aware of Defendant Mydlo's defamatory statement to the FSMB/FCVS in October of 2015 when Plaintiff was sent Defendant Mydlo's representation via mail from the FSMB/FCVS.

76.    Plaintiff believes and therefore avers that because of his race, ancestry, ethic and/or linguistic characteristics and/or in retaliation for complaining of race discrimination, Defendants (1) issued Plaintiff's negative performance evaluations compared his co-resident, not based on factual objective evidence; (2) terminated Plaintiff's employment with Defendant TUH during his PGY-4 residency; (3) terminated Plaintiff's PGY-5 contract; (4) created a hostile work environment for Plaintiff; (5) failed to provide Plaintiff with a positive letter of recommendation; (6) provided false information to potential urology residency programs after Plaintiff's termination; (7) provided false information to  FSMB/FCVS in order to cause damage to Plaintiff's professional reputation and character and in order to limited Plaintiff's ability to obtain a medical license in the United States and/or a job within the medical profession; and (8) denied credit for the PGY-4 that plaintiff has successfully completed.

**Count I**
**Violation of 42 U.S.C. Section 1981**
**(Racial Discrimination & Retaliation – Wrongful Termination)[5]**
**- Against All Defendants -**

77.     The foregoing paragraphs are incorporated herein by reference as though set forth in full.

78.     Defendants discriminated against Plaintiff on the basis of his race, ancestry, ethnic characteristics, and/or linguistic characteristics.

79.     Upon information and belief, Plaintiff was terminated from Defendant TUH in June of 2012 because of his race, ancestry, ethnic characteristics, and/or linguistic characteristics and/or because he complained of racial discrimination to Defendant TUH's urology residency program's management (and teaching faculty).

80.     Defendant Individuals are personally liable for said violations of Section 1981 because they were high-level managers and/or individuals who controlled the terms and conditions of Plaintiff's employment and participated in Plaintiff's pretextual termination from Defendant TUH.

81.     These actions aforesaid constitute violations of 42 U.S.C. §1981.

**Count II**
**Violation of 42 U.S.C. Section 1981**
**(Racial Discrimination & Retaliation – Denial of PGY-4 Credit)**
**- Against All Defendants -**

82.     The foregoing paragraphs are incorporated herein by reference as though set forth in full.

---

[5] 42 U.S.C. §1981 protects against discrimination based on race, which includes discrimination based on one's ancestry or ethnic characteristics. *See St. Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (U.S. 1987)("Based on the history of § 1981, we have little trouble in concluding that Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics. Such discrimination is racial discrimination that Congress intended § 1981 to forbid, whether or not it would be classified as racial in terms of modern scientific theory.")

83.     Plaintiff entered into an agreement with Defendant TUH to perform work for Defendant TUH as a PGY-4 resident for the term of July 21, 2011 through July 20, 2012.

84.     Defendant TUH's Graduate Medical Education ("GME") policies and procedures, specifically, TUH GME 201 [Formally TUHRAC – 201] Title: Guidelines for Resident Evaluation, Promotion, and Dismissal, Policy and Procedure #4 states: "A resident shall be promoted to the next year of training or graduated from the program only when s/he has been judged to have successfully fulfilled the requirements for the current level of training."

85.     Defendant TUH and Defendant Mydlo promoted Plaintiff to a PGY-5 by entering into a contract with Plaintiff in April 2012.

86.      Upon information and belief, Defendant TUH and Defendant Mydlo denied Plaintiff his PGY-4 credit because of his race, ancestry, ethnic characteristics, and/or linguistic characteristics and/or because he complained of racial discrimination to Defendant TUH's urology residency program's management (and teaching faculty).

87.     Defendant Individuals are personally liable for these aforesaid violations of Section 1981 because they were high-level managers and/or individuals who controlled the terms and conditions of Plaintiff's employment and participated in Plaintiff's pretextual termination from Defendant TUH.

88.     These actions aforesaid constitute violations of 42 U.S.C. §1981.

**Count III**
**Violation of 42 U.S.C. Section 1981**
**(Racial Discrimination & Retaliation – Wrongful Performance Evaluations)**
**- Against All Defendants -**

89.     The foregoing paragraphs are incorporated herein by reference as though set forth in full.

90.    Upon information and belief, Plaintiff was issued negative performance evaluations in May of 2012 because of his race, ancestry, ethnic characteristics, and/or linguistic characteristics and/or because he complained of racial discrimination to Defendant TUH's urology residency program's management (and teaching faculty).

91.    Despite Plaintiff's superior performance in Defendant TUH's residency program as evidently documented by Defendant Mydlo, Defendants issued negative performance evaluations only to document as a reason for abrupt and discriminatory termination of Plaintiff's categorical residency contract without academic due process of written warning, remediation, and probation.

92.    Upon information and belief, Defendant Mydlo did not even give any evaluations to Plaintiff's co-resident, who is a Caucasian American male, for the entire 2011/2012 academic year. Despite this, he was promoted to PGY-5. Plaintiff was clearly treated in a discriminatory manner as compared to his co-resident who is at the same level of training in Defendant TUH's program.

93.    Defendant Individuals are personally liable for said violations of Section 1981 because they were high-level managers and/or individuals who controlled the terms and conditions of Plaintiff's employment and personally participated in Plaintiff's pretextual performance evaluations issued to Plaintiff in May of 2012.

94.    These actions aforesaid constitute violations of 42 U.S.C. §1981.

**Count IV**
**Violation of 42 U.S.C. Section 1981**
**(Racial Discrimination & Retaliation – Hostile Work Environment)**
**- Against All Defendants –**

95.    The foregoing paragraphs are incorporated herein by reference as though set forth in full.

96.     Plaintiff was subjected to a hostile work environment during his period of employment due to his race, ancestry, ethnic characteristics, and/or linguistic characteristics and/or complaints of racial discrimination through disparate treatment, pretextual admonishment, and demeaning and/or discriminatory treatment towards him.

97.     Defendant Individuals are personally liable for said violations of Section 1981 because they were high-level managers and/or individuals who controlled the terms and conditions of Plaintiff's employment. Defendant Individuals also knew of and failed to remedy race-based harassment and Plaintiff's hostile work environment and/or participated in subjecting Plaintiff to said hostile work environment.

98.     These actions aforesaid constitute violations of 42 U.S.C. §1981.

**Count V**
**Violation of 42 U.S.C. Section 1981**
**(Racial Discrimination & Retaliation – Wrongful Termination of PGY-5 Contract)**
**- Against All Defendants –**

99.     The foregoing paragraphs are incorporated herein by reference as though set forth in full.

100.    In April of 2012, Plaintiff and Defendant Mydlo signed a contract for Plaintiff's employment as a PGY-5 resident in Defendant TUH's urology residency program.

101.    Upon information and belief, Plaintiff's PGY-5 contract with Defendant TUH was breached/terminated because of his race, ancestry, ethnic characteristics, and/or linguistic characteristics and/or because he complained of racial discrimination to Defendant TUH's urology residency program's management (and teaching faculty).

102.    Defendants violated ACGME guidelines and TUH policies as Plaintiff was illegally denied academic due process of written warning, remediation, and probation.

103. Defendant Individuals are personally liable for said violations of Section 1981 because they were high-level managers and/or individuals who controlled the terms and conditions of Plaintiff's employment and participated in the pretextual breach/termination of Plaintiff's PGY-5 contract.

104. These actions aforesaid constitute violations of 42 U.S.C. §1981.

**Count VI**
**Violation of 42 U.S.C. Section 1981**
**(Racial Discrimination & Retaliation – Failure to Provide Letter of Recommendation)**
**– Against Defendant TUH and Defendant Mydlo –**

105. The foregoing paragraphs are incorporated herein by reference as though set forth in full.

106. In or about August of 2012, after Plaintiff was already informed that he was terminated from Defendant TUH, that he was not being promoted to a PGY-5, and that his last day of employment would be November 19, 2012, Plaintiff and Defendants agreed that Plaintiff would submit a resignation letter in exchange for a positive letter of recommendation.

107. As promised, Plaintiff submitted a final letter of resignation on August 16, 2012; however, to date, neither Defendant TUH nor Defendant Mydlo have ever provided a positive letter of recommendation to Plaintiff.

108. Defendant Mydlo is personally liable for said violations of Section 1981 because he was a high-level manager who controlled the terms and conditions of Plaintiff's employment and participated in the discriminatory and retaliatory decision not to issue Plaintiff a positive recommendation letter.

109. These actions aforesaid constitute violations of 42 U.S.C. §1981.

**Count VII**
**Violation of 42 U.S.C. Section 1981**
**(Racial Discrimination & Retaliation – Providing False and Defamatory Information to FSMB)**
**- Against Defendant TUH and Defendant Mydlo –**

110.    The foregoing paragraphs are incorporated herein by reference as though set forth in full.

111.    On or about July 13, 2013, Defendant Mydlo intentionally reported to the FSMB/FCVS false and defamatory information in order to cause Plaintiff humiliation, damage to his professional character and reputation, and emotional distress. Such false and defamatory information has also undoubtedly limited Plaintiff's ability to obtain employment as well as his medical license to practice medicine in the United States.

112.    Specifically, Defendant Mydlo reported to the FSMB/FCVS that Plaintiff was a PGY-1 resident (training level 1) for the academic year 2011/2012, which is completely false.

113.    Defendant TUH and Defendant Mydlo reported to FSMB/FCVS that Plaintiff was on probation while participating in the TUH urology residency program during the 2011/2012 academic year, which is completely false.

114.    Defendant TUH's and Defendant Mydlo's reported false statements to FSMB/FCVS are discriminatory and retaliatory and were made to degrade, ridicule, humiliate and discredit Plaintiff's qualifications.

115.    Plaintiff was made aware of Defendant Mydlo's defamatory statement to the FSMB/FCVS in October of 2015 when Plaintiff was sent Defendant Mydlo's representation via mail from the FSMB/FCVS.

116.     Plaintiff believes and therefore avers that Defendants made false representations to FSMB/FCVS in retaliation for his complaints of racial discrimination.

117.     Defendant Mydlo is personally liable for violations of Section 1981 because he was a high-level manager who controlled the terms and conditions of Plaintiff's employment and personally made retaliatory false representations to FSMB/FCVS in July of 2013.

118.     These actions aforesaid constitute violations of 42 U.S.C. §1981.

**Count VIII**
**Pennsylvania Common Law**
**(Breach of Contract – PGY-4 & PGY-5 Contract)**
**- Against Defendant TUH –**

119.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

120.     Plaintiff entered into an agreement with Defendant TUH to perform work for Defendant TUH as a PGY-4 resident for the term of July 21, 2011 through July 20, 2012.

121.     Plaintiff entered into another agreement with Defendant TUH to perform work for Defendant TUH as a PGY-5 resident for the term of July 21, 2012 through July 20, 2013.

122.     Defendant TUH's GME policies and procedures, specifically, TUH GME - 201 [Formally TUHRAC – 201] Title: Guidelines for Resident Evaluation, Promotion, and Dismissal, Policy and Procedure #4 states "A resident shall be promoted to the next year of training or graduated from the program only when s/he has been judged to have successfully fulfilled the requirements for the current level of training."

123.     Plaintiff fulfilled the requirements of PGY-4, Defendant TUH breached PGY-4 contract by denying credit for PGY-4.

124.   Under Plaintiff's PGY-4 contract and PGY-5 contract, it provides that Plaintiff's continuation in the Program is based upon the evaluations of his Program Director, preceptors and the discharge of his responsibilities.

125.   Under Plaintiff's PGY-4 contract and PGY-5 contract, Defendant TUH agreed that the Program Director "shall inform you in writing no less than 4 months prior to the end of your current training year, if your appointment is terminated, or if you will continue in the program at the same PGY level."

126.   Despite promoting Plaintiff to a PGY-5 resident by entering into a contract with Plaintiff for his PGY-5 residency, Defendant TUH abruptly terminated Plaintiff on June 6, 2012 (while he was still operating under his PGY-4 contract term) for alleged performance issues.

127.   TUH terminated plaintiff's PGY-5 contract without due process of written warning, remediation, and/or probation.

128.   Defendant Mydlo stated three reasons in the contract termination letter dated June 6th 2012, which are false.

129.   Defendant breached its PGY-4 and PGY-5 contracts with Plaintiff by:

- Failing to follow their own policies and procedures in issuing Plaintiff performance evaluations that formed the basis of Defendant TUH's alleged reason to terminate their aforesaid contracts with Plaintiff;

- Failing to provide Plaintiff due process as it related to his performance evaluations and Defendant TUH's termination of its contracts with him;

- Failing to operate in good faith and fair dealing under its contracts with Plaintiff and instead terminating such contracts without giving Plaintiff any warning about or opportunity to correct his alleged performance deficiencies, as required in Defendant TUH's policies;

- Failing to operate in good faith and fair dealing under it contracts with Plaintiff and instead terminating such contracts without any regard to requirements and/or policies under the ACGME;

- Failing to provide Plaintiff with adequate notice of his termination prior to the end of his training year with Defendant TUH; and

- Terminating such contracts for reasons related to Plaintiff's race, ancestry, ethnic and/or linguistic characteristics rather than for legitimate performance deficiencies.

130.    Plaintiff has suffered multiple damages from Defendant TUH's aforesaid breaches, including but not limited to loss of income, loss of future income, and the ability to become eligible for certification by the American Board of Urology.

131.    These actions as aforesaid constitute violations of Pennsylvania common law.

**Count IX**
**Pennsylvania Common Law**
**(Breach of Contract)**
**-Against Defendant TUH-**

132.    The foregoing paragraphs are incorporated herein by reference as though set forth in full.

133.    In or about August of 2012, after Plaintiff was already informed that he was terminated from Defendant TUH, that he was not being promoted to PGY-5, and that his last day

of employment would be November 19, 2012, Plaintiff, Defendant TUH, and Defendant Mydlo formed an oral contract.

134.   The terms of the verbal contract (which was also confirm in an email communication) were that Plaintiff would submit a resignation in exchange for a positive letter of recommendation from Defendant Mydlo.

135.   As promised, Plaintiff submitted a final letter of resignation on August 16, 2012; however, to date, neither Defendant TUH nor Defendant Mydlo have ever provided a positive letter of recommendation to Plaintiff.

136.   Defendant TUH and Defendant Mydlo have breach their contract with Plaintiff by failing to provide him with a positive reference letter.

137.   These actions aforesaid constitute violations of Pennsylvania common law.

**Count X**
**Pennsylvania Common Law**
**(Defamation)**
**-Against Defendant TUH and Defendant Mydlo-**

138.   The foregoing paragraphs are incorporated herein by reference as though set forth in full.

139.   On or about July 13, 2013, Defendant TUH and Defendant Mydlo intentionally reported to the FSMB/FCVS[6] false and defamatory information in order to cause Plaintiff humiliation, damage to his professional character and reputation, and emotional distress.

140.   Specifically, Defendant TUH and Defendant Mydlo reported to the FSMB/FCVS that Plaintiff was a PGY-1 resident (training level 1) for the academic year 2011/2012, which is completely false.

---

[6] The FSMB/FCVS is a national non-profit organization representing 70 medical and osteopathic boards on the United States. FSMB/FCVS was established in September 1996 to provide a centralized, uniform process for state medical boards to obtain a verified, primary-source record of a physician's core medical credentials.

141.   Defendant TUH and Defendant Mydlo reported to FSMB/FCVS that Plaintiff was on probation while participating in the TUH urology residency program during the 2011/2012 academic year, which is completely false.

142.   Plaintiff was made aware of Defendant TUH's and Defendant Mydlo's defamatory statements to the FSMB/FCVS in October of 2015 when Plaintiff was sent Defendant Mydlo's representation via mail from the FSMB/FCVS.

143.   Such false and defamatory information has caused Plaintiff humiliation, damage to his professional character and reputation, and emotional distress (in addition to other actual harm).

144.   Plaintiff applied for multiple jobs and residency programs after his termination from Defendant TUH.

145.   Plaintiff has been rejected from multiple jobs and residency programs since July of 2013

146.   Such false and defamatory information has undoubtedly limited Plaintiff's ability to obtain employment and/or residency contracts as well as his medical license to practice medicine in the United States.

147.   The aforesaid statements contained on Defendant TUH's Report (completed by Defendant Mydlo) which were provided and/or relayed by Defendant TUH and Mydlo were defamatory in the sense that (1) they are untrue; (2) Defendant TUH and Mydlo knew such statements to be untrue at the time that they were made; and (3) such statements were made by Defendant TUH and Mydlo with the intent to harm Plaintiff's reputation and to deter potential employers and/or residency programs from hiring him and/or accepting him.

148.     The statements made to FSMB/FCVS regarding Plaintiff were made to the public, were false, and were made maliciously, negligently, knowingly, and recklessly.

149.     The statements made by Defendant TUH and Defendant Mydlo (as discussed *supra*) clearly applied to Plaintiff.

150.     Any third party would undoubtedly understand that such defamatory statements applied to Plaintiff.

151.     As a direct and proximate result of Defendant TUH's and Mydlo's statements, Plaintiff suffered special harm, including but not limited to loss of income and damage to professional reputation, humiliation, degradation, emotional distress, mental anguish, injury to professional standing, and deprivation of his right to achieve livelihood and a certification in urology by the American Board of Urology.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.     Defendants are to be prohibited from continuing to maintain their illegal policy, practice or custom of discriminating/retaliating against employees and are to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B.     Defendants are to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority.  Plaintiff should be accorded those benefits illegally withheld from the date he first suffered discrimination/retaliation/breach of contract/defamation at the hands of Defendants until the date of verdict;

C.     Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount determined by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D.     Plaintiff's PGY-4 and PGY-5 contract with Defendant TUH should be enforced;

E.     Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate, including but not limited to reinstatement;

F.     Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

G.     Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to the Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

H.     Plaintiff's claims are to receive trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

KARPF, KARPF & CERUTTI, P.C.

By:     _____
Ari R. Karpf, Esquire
Attorney for Plaintiff
3331 Street Road
Two Greenwood Square
Suite 128
Bensalem, PA 19020

Dated: November 4, 2015

29

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

<u>**CASE MANAGEMENT TRACK DESIGNATION FORM**</u>

Rao S. Mandalapu, MD.                                              :                  CIVIL ACTION
                   **v.**                                                                           :
Temple University Hospital, Inc., et al.                     :                  NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.      ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.      ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.      ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)      ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (X )

| | | |
|---|---|---|
| <u>  11/4/2015  </u> | <u> Ari R. Karpf </u> | <u>Plaintiff         </u> |
| **Date** | **Attorney-at-law** | **Attorney for** |
| <u> (215) 639-0801 </u> | <u> (215) 639-4970 </u> | <u>akarpf@karpf-law.com </u> |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 2300 Old Spanish Trl., Apt. 2048, Houston, TX 77054

Address of Defendant: 3401 N. Broad Street, Philadelphia, PA 19140

Place of Accident, Incident or Transaction: Defendants place of business
(Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

   (Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))           Yes☐  No☒

Does this case involve multidistrict litigation possibilities?                  Yes☐  No☒

*RELATED CASE, IF ANY:*

Case Number: _____  Judge _____  Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1.  Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?

                                                              Yes☐  No☐

2.  Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?

                                                              Yes☐  No☐

3.  Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?

                                                              Yes☐  No☐

4.  Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?

                                                              Yes☐  No☐

**CIVIL: (Place ✔ in ONE CATEGORY ONLY)**

**A.** *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☒ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

**B.** *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify) _____

### ARBITRATION CERTIFICATION
(Check Appropriate Category)

I, Ari R. Karpf _____, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: 11/4/2015 _____ _____    ARK2484

                    Attorney-at-Law                  Attorney I.D.# 91538

<b>NOTE:</b> A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 11/4/2015 _____ _____    ARK2484

                    Attorney-at-Law                  Attorney I.D.# 91538

CIV. 609 (5/2012)

# CIVIL COVER SHEET

%JS 44 (Rev. 12/07, NJ 5/08)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

MANDALAPU, MD., RAO S.

**(b)** County of Residence of First Listed Plaintiff   Harris

**(c)** Attorney's (Firm Name, Address, Telephone Number and Email Address)

Karpf, Karpf & Cerutti, P.C., 3331 Street Road,
Two Greenwood Square, Suite 128, Bensalem,
PA 19020, (215) 639-0801, akarpf@karpf-law.com

## DEFENDANTS

TEMPLE UNIVERSITY HOSPITAL, INC., et al.

County of Residence of First Listed Defendant   Philadelphia

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**
PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☒ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus - Alien Detainee
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42USC1981

Brief description of cause:
Violations of 42USC1981 and Pennsylvania Common Law.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) (See instructions):

JUDGE

DOCKET NUMBER

Explanation:

11/4/2015
DATE

SIGNATURE OF ATTORNEY OF RECORD

| Print | Save As... | Export as PDF | Retrieve PDF File | Reset |