# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

RAO S. MANDALAPU, M.D.

              *Plaintiff,*

        v.

TEMPLE UNIVERSITY HOSPITAL, INC.,
et. al.

             *Defendants.*

---

**CIVIL ACTION**

**CASE NO. 2:15-cv-05977-JP**

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO QUASH

Defendants Temple University Hospital, Inc. ("TUH"), Dr. Jack H. Mydlo ("Dr. Mydlo"), Dr. Robert Guy Uzzo ("Dr. Uzzo"), Dr. Richard E. Greenberg ("Dr. Greenberg"), Dr. David Y.T. Chen ("Dr. Chen"), Dr. Alexander Kutikov ("Dr. Kutikov"), Dr. Robert S. Charles ("Dr. Charles"), Dr. Steven J. Hirshberg ("Dr. Hirshberg"), and Dr. Yan F. Shibutani ("Dr. Shibutani") (collectively referred to as "Defendants") hereby file this Motion to Quash the additional requests of Plaintiff Rao S. Mandalapu ("Mandalapu") under a subpoena directed to the Accreditation Council for Graduate Medical Education ("the ACGME").[1]

## I.      INTRODUCTION

Mandalapu alleges that Defendants failed to promote him to an advanced resident position because of racial discrimination based on his discernable Indian accent. Defendants believe that Mandalapu was a woefully inadequate urology resident and TUH refused to promote

---

[1] Defendants file this *Motion* to alleviate the burden on the ACGME to incur fees to formally object to the continued requests of Mandalapu.

him because he lacked the skills necessary to advance him to the next year in the residency program.

To date, the parties have exchanged significant discovery and have conducted 10 depositions. Nonetheless, Mandalapu seeks additional discovery from the ACGME, a non-party entity based in Chicago. The ACGME is an independent, not-for-profit, physician-led organization that sets and monitors the professional educational standards essential in preparing physicians to deliver safe, high-quality medical care. Mandalapu first sent a subpoena to the ACGME without notice to Defendants in contravention of the federal rules. Mandalapu then served the ACGME with a second incredibly broad and expansive subpoena seeking all complaints against TUH, Dr. Mydlo, Dr. Greenberg, and Dr. Chen regarding "discrimination, retaliation or harassment by any resident in any residency program conducted by Temple University Hospital." *See* Subpoena attached hereto as Exhibit 1. The subpoena contains no time and/or scope restrictions.

The ACGME produced documents to Mandalapu regarding his own complaints. Mandalapu then requested additional documents and information from the ACGME regarding an alleged complaint made in 2016 – *four years* after Mandalapu exited the program at TUH. Defendants object to this request as it (1) is outside the scope of this litigation; (2) requests confidential information; and (3) constitutes a quintessential fishing expedition regarding other residents unrelated to Mandalapu that will undoubtedly result in an unnecessary mini-trial concerning the facts and circumstances of other residents. The documents sought have no probative value in the instant case. For those reasons, Defendants respectfully request that their Motion to Quash be granted in its entirety.

## II.    FACTUAL BACKGROUND

Mandalapu is an individual born in India and speaks with a discernable Indian accent. *Second Amended Complaint* at ¶ 18.  In 2011, Mandalapu began his residency at TUH in the Urology Department as a PGY-4 resident.  Id. at ¶ 26.  During that term, he rotated among TUH, Abington Hospital, and Fox Chase Cancer Center.  Id. at ¶ 50.  The individually named defendants were all Urology physicians practicing at one of the three hospitals who evaluated Mandalapu's performance.  Id. at ¶¶ 8-15.  In 2012, at the close of the academic year and at the end of Mandalapu's rotation, he was informed that his performance was so poor that he would not be elevated to the PGY-5 resident position.  Id. at ¶48.  Mandalapu now asserts that this decision was based on discrimination pursuant to 42 U.S.C. §1981 ("Section 1981") and 42 U.S.C. §1983 ("Section 1983").

Sometime on or around August 14, 2017, Mandalapu served a subpoena on the ACGME[2] without notice to Defendants in violation of Federal Rule of Civil Procedure 45(a)(4) requiring parties to provide notice to all named parties prior to service of a subpoena on the non-party. Defendants learned of the subpoena only after receiving correspondence from the ACGME's counsel.  *See* August 29, 2017 Correspondence attached hereto as Exhibit "2". Ultimately that subpoena was withdrawn.  *See* Correspondence from Opposing Counsel, attached hereto as Exhibit "3".

Mandalapu's counsel then served another subpoena on the ACGME on or around September 1, 2017. That subpoena requested "[a]ny and all the complaints, against the Temple University Hospital urology residency program and/or Dr. Jack H. Mydlo, Dr. Richard E. Greenberg, Dr. David Y.T. Chen, regarding discrimination, retaliation or harassment by any

---

[2] To date, Defendants have never received a copy of the original subpoena served upon the ACGME.

resident or participant in a residency program conducted by the Temple University Hospital." Exhibit 1.

On September 29, 2017, Defendants received notice from the ACGME's counsel that he was responding to the subpoena and producing documents related to Mandalapu. *See* September 29, 2017 Correspondence from the ACGME attached hereto as Exhibit "4". The ACGME also reiterated that its objections to the withdrawn subpoena would remain applicable. Id. In that email, counsel for the ACGME referenced a 2016 complaint against TUH. In the ACGME's formal objection, it reiterates the undue burden placed on it, a non-profit, to respond to the subpoena. The ACGME also objects to the subpoena because the information sought is confidential.

On October 25, 2017, Mandalapu made an additional request that the ACGME produce documents related to the other complaint referenced in the ACGME's previous correspondence. *See* October 25, 2017 Correspondence attached hereto as Exhibit "5". Thereafter, Defendants formally joined the objections to the subpoena raised by the ACGME by stating that this particular complaint was four years after Mandalapu's tenure at TUH. *See* October 25, 2017 Correspondence attached hereto as Exhibit "6". Mandalapu has refused to withdraw his additional request under the subpoena, necessitating this motion.

Defendants file this Motion to Quash objecting to the production of any additional material by the ACGME in response to Mandalapu's subpoena.

III.   **LEGAL REASONING**

A party may file a motion to quash a subpoena pursuant to Rule 45(c)(3)(A) when the subpoena: "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other

4

protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden."
Defendants have standing to quash the subpoena directed to the non-party, the ACGME, because
"it has some personal right or privilege with respect to the subject matter sought in the subpoena.
. . ." *Saller v. QVC, Inc.,* No. 15-2279, 2016 U.S. Dist. LEXIS 82895 at *7 (E.D. Pa. June 24,
2016).

As an initial matter, this subpoena should be quashed because Mandalapu failed to follow
the Federal Rules.[3] Mandalapu failed to provide notice of the original subpoena.  Defendants
were not aware of even the existence of the originally served subpoena until nearly two weeks
after it was served.  But for the ACGME's counsel disclosing and including Defendants in the
communication with Mandalapu's counsel, Defendants would have no knowledge of the
subpoena at all.

On the merits, Mandalapu's subpoena should be quashed because courts have set forth
limitations when seeking comparative information in discrimination cases.  Seeking complaints
four years after the alleged adverse action is outside the scope and wholly overbroad.
Additionally, the information is confidential. Defendants have a protectable interest in the
confidentiality of the alleged 2016 complaint.  Accordingly, Defendants respectfully request that
Mandalapu's subpoena be limited to a relevant time period following his resignation from TUH.

1.    **Courts Have Crafted Specific Parameters for Disclosure and Production of
      Comparative Information in Discrimination Cases**

In discrimination cases, courts have been thoughtful in considering the need for the
plaintiff to not be unnecessarily restricted. *Miles v. Boeing Co.,* 154 at 119 (E.D. Pa. March 2,

---

[3] In *Kremsky v. Kremsky*, No. 16-44742017 U.S. Dist. Lexis 103 (E.D. Pa. Jan. 3, 2017) , the Court found
that failure to provide notice to parties when serving subpoenas on 14 non-parties caused harm to the
Defendant even when the non-parties had yet to produce documents. *Id.* at 7. The Court found that harm
was caused to the Defendant and to the public when attorneys fail to comply with Rule 45(a)(4). *Id.* at 6.

1994). Still, discovery "must comport with the traditional notions of relevancy." *Id.*
Particularly in discrimination cases, "discovery should be tailored to the issues involved in the particular case." *Kresefsky v. Pansonic Commc'ns &Sys. Co.*, 169 F.R.D. 54, 64 (D. N.J. 1996). The subpoena recipient's "status as a nonparty to the litigation should also be considered." *Lady Liberty Transp. Co.*, 2007 U.S. Dist. LEXIS 14899, at *33 (*citing In re Auto. Refinishing Paint Antitrust Litig.*, 229 F.R.D. 482, 495 (E.D. Pa. 2005)). Indeed, "[c]ourts have imposed broader restrictions on the scope of discovery when a non-party is targeted." *Small v. Provident Life and Acc. Ins. Co.*, 1999 U.S. Dist. LEXIS 18930, *4 (E.D. Pa. Dec. 9, 1999). In the Third Circuit, courts have strictly limited discovery to a time-frame. *Clarke v. Mellon Bank, N.A.*, No- 92-CV-4823, 1993 U.S. Dist. LEXIS 6680 at * 6-7 (E.D. Pa. May 11, 1993). In an attempt to balance the Plaintiff's need for information regarding comparative treatment, courts have extended discovery to two years after the alleged conduct. *Gaul v. Zep Mfg. Co.,* No- 03-2439, 2004 U.S. Dist. LEXIS 1990 at * 5-6 (E.D. Pa. Feb. 5, 2004).

In *Milner v. National School of Health Technology*, plaintiff brought an employment discrimination case pursuant to 42 U.S.C. §§1981, 1983, 1985 and Title VII. 73 F.R.D. 528, 630 (E.D. Pa. Feb. 7, 1977). The court assessed the time period related to discovery served on the defendant by the plaintiff. *Id.* The discovery requested information pertaining to the period of time from January 1970 through the present. *Id.* at 631. That request would encompass a period of under two years after the alleged adverse action. *Id.* The court deemed that two years after the alleged conduct was not burdensome and thus compelled the defendants to produce the documents for that period of time. *Id.* at 633.

Generally, Pennsylvania courts have found that approximately two years after the adverse action is sufficient. *Id.*; *Miles*, 154 F.R.D. at 120; *Clarke*, 1993 U.S. Dist. LEXIS at *6-7 (E.D.

Pa. May 11, 1993) (finding that plaintiff was permitted to obtain employee profiles from the defendant through December 31, 1991 when plaintiff was terminated on August 31, 1990); *Lewis v. Home, Ins. Co.*, No- 88-4061, 1988 U.S. Dist. LEXIS 12882 at *6-7 (E.D. Pa. Nov. 17, 1988)(reasoning that the plaintiff was permitted to obtain discovery from the employer from a period of 1983-1987 when plaintiff's termination took place on August 28, 1987, however the Court precluded plaintiff from obtaining all claims from 1977 as it was deemed excessive).

Here Mandalapu is seeking information related to a complaint that was submitted to the ACGME in 2016 -- nearly four years after Mandalapu's resignation in June 2012. Permitting Mandalapu to obtain these documents is exactly what the Third Circuit courts attempted to limit when they reasoned that two years after the alleged adverse action was sufficient. For these reasons, Defendants request that the Court quash the subpoena served on the ACGME and preclude Mandalapu from receiving additional documents related to his requests.

### 2. Mandalapu's Subpoena Should be Quashed Because The Subpoena is Overly Broad and Seeks Protected Information

The scope of Rule 45 is not unlimited and is "subject to the contours of Rule 26(b)(1)." *Essex Ins. Co. v. RMJC, Inc.*, No. 01-4049, 2008 U.S. Dist. LEXIS 54035 at *3 (E.D Pa. July 16, 2008). The federal discovery rules do not permit parties to engage in a fishing expedition. *Id.* at *4. "Discovery need not be confined to matters of admissible evidence but may encompass that which 'appears reasonably calculated to lead to the discovery of admissible evidence.'" FED. R. CIV. P. 26(b)(1); *See also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Courts within the Third Circuit require subpoenas and discovery requests to be narrowly tailored and often do not permit a party to obtain the "entire personnel records of all individuals without a more particularized showing of relevance." *Miles*, 154 F.R.D. at 115; *Lewis v. Home Ins. Co.*,

7

No. 88-4061, 1988 U.S. Dist. LEXIS 12882 at *6-7 (E.D. Pa. Nov. 17, 1988); *Ballard v. Williams*, No. 3:10-CV-1456, 2013 U.S. Dist. LEXIS 133508 at * 10 (M.D. Pa. Sept. 18, 2013).

Here, Mandalapu served a subpoena requesting, "[a]ny and all complaints, against the Temple University Hospital urology residency program and/or Dr. Jack H. Mydlo, Dr. Richard E. Greenburg, Dr. David Y.T. Chen, regarding discrimination, retaliation or harassment by any resident or participate in a residency program conducted by Temple University Hospital." Exhibit 1. This request seeks all complaints for an unlimited period of time. On its face, the subpoena is overbroad and not limited to an appropriate time-period associated with Mandalapu's claims – complaints that were made four years after Mandalapu's tenure with the program should not be disclosed.

Further, Mandalapu requests all discrimination complaints regardless of protected class. He also fails to limit the request to accent-based claims. In sum, Mandalapu should not be permitted to obtain information for claims that are completely unrelated to the facts of his case.

The subpoena also attempts to obtain information of other residents – individuals who are not parties to the current action. Responsive documents could include private and confidential information related to these non-parties. Mandalapu's failure to provide notice (mentioned above) violates the Family Education Rights and Privacy Act, 34 CFR Section 99, ("FERPA") that permits the release of the records of personally identifiable information pursuant to a *lawfully* issued subpoena. 34 CFR §99(a)9)(ii) (emphasis added). Mandalapu's subpoena is not "lawful" because he failed to comply with the Federal Rules, thus, producing the requested information would violate FERPA.

## IV.   CONCLUSION

For the foregoing reasons, Defendants request that the Court quash Mandalapu's requests

for additional documents under the subpoena served on the ACGME.

Respectfully submitted,

Dated:  November 6, 2017

Michael J. Fortunato, Esquire
Jason K. Roberts, Esquire
LaTi Spence, Esquire
RUBIN, FORTUNATO & HARBISON P.C.
10 South Leopard Road
Paoli, PA  19301
Tel. (610) 408-2005/2056/2030
Fax. (610) 854-0392

*Attorneys for Defendants*

# EXHIBIT 1

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

## for the

### Eastern District of Pennsylvania

| | |
|---|---|
| Rao S. Mandalapu, M.D. | ) |
| _Plaintiff_ | ) |
| v. | )   Civil Action No.  2-15-cv-05977-JP |
| Temple University Hospital, Inc. et al | ) |
| _Defendant_ | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:
Accreditation Council on Graduate Medical Education
Attn: Louise King, MS, Executive Director
Residency Review Committee for Urology515 N. State St, Ste. 2000, Chicago, IL 60654

_(Name of person to whom this subpoena is directed)_

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

      SEE DOCUMENT REQUEST ATTACHED HERETO.

| Place: LaSalle Process Servers, LP<br>   105 W. Madison Steet, Ste. 1306<br>   Chicago, IL 60602 | Date and Time:<br><br>  October 1, 2017 5:00p.m. |
|---|---|

☐ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

    The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   09/01/2017

| _CLERK OF COURT_ | | |
|---|---|---|
| | OR | |
| _____ | | _____ |
| _Signature of Clerk or Deputy Clerk_ | | _Attorney's signature_ |

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_ _____
      Plaintiff, Rao S. Mandalapu, M.D.         , who issues or requests this subpoena, are:
Mark D. Downey, 1910 Pacific Ave, Ste 15650, Dallas, TX 75201, mdowney@hakllp.com (214) 764-7279

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## SCHEDULE "A"

## DEFINITIONS

1.  <u>Document(s)</u>.  The terms "document" or "documents" shall mean any written, recorded, filmed, electronically stored information, or graphic matter, whether produced, reproduced, or on paper, cards, tapes, film, electronic facsimile, computer storage devices, or any other media, including, but not limited to, originals and all copies which are different in any way from the original, whether by interlineation, receipt stamp, notation, indication of copies sent or received, or otherwise, and drafts, which are in your possession, custody, or control, or in the possession, custody, or control of its present or former agents, representatives, or attorneys, or any and all persons acting on its behalf, including documents at any time in the possession, custody, or control of such individuals or entities or known by you to exist. Examples include, but are not limited to, computer disks, audiotapes, videotapes, memoranda, minutes, records, photographs, videotapes, floppy disks, compact disks, facsimiles, correspondence, telegrams, diaries, bookkeeping entries, financial statements, tax returns, checks, check stubs, reports, studies, charts, graphs, statements, notebooks, handwritten notes, applications, agreements, books, pamphlets, periodicals, appointment calendars, records and recordings of oral conversations, electronic mail, business cards, and work papers. Without limitation of the term "control" as used above, a document is deemed to be in your control if it has the right to secure the document or a copy thereof from another person, or public or private entity that has actual possession thereof.

2.  <u>Mandalapu</u>.  The term "Mandalapu" refers to Plaintiff Rao S. Mandalapu, M.D., date of birth 04/18/1965.

3.     <u>Temple University Hospital</u>.   The term "Temple University Hospital" refers to Temple University Hospital, and all other affiliates, parent corporations, subsidiaries, executors, and assigns of Temple University Hospital.

## DOCUMENTS REQUESTED

1.     Any and all the complaints, against the Temple University Hospital urology residency program and/or Dr. Jack H. Mydlo, Dr. Richard E. Greenburg, Dr. David Y.T. Chen, regarding discrimination, retaliation or harassment by any resident or participant in a residency program conducted by Temple University Hospital.

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  2-15-cv-05977-JP

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
　(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
　(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
　　(i) is a party or a party's officer; or
　　(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
　(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
　(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
　(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
　(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
　　(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
　　(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
　(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
　　(i) fails to allow a reasonable time to comply;
　　(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
　　(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
　　(iv) subjects a person to undue burden.
　(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
　　(i) disclosing a trade secret or other confidential research, development, or commercial information; or

　　(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
　(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
　　(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
　　(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
　(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
　(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
　(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
　(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
　(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
　　(i) expressly make the claim; and
　　(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
　(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT 2

**Douglas Carlson LLC**
**Attorney**
**330 North Wabash, Suite 3300**
**Chicago, Illinois 60611**

August 29, 2017

<u>VIA ELECTRONIC MAIL</u>

Mr. Mark D. Downey
1910 Pacific Avenue, Suite 15650
Dallas, Texas 75201

      Re:    *Mandalapu v. Temple University Hospital, Inc., et al.*, United States District
              Court for the Eastern District of Pennsylvania, Civil Action No. 2-15-cv-
              05977-JP
              Subpoena on Accreditation Council for Graduate Medical Education

Mr. Downey:

On or about August 14, 2017, the Accreditation Council for Graduate Medical
Education (ACGME) received at its headquarters in Chicago, Illinois (401 North Michigan
Avenue, Suite 2000), a Subpoena to Produce Documents, Information or Objects or to Permit
Inspection of Premises in a Civil Action in the above captioned matter, returnable on
September 1, 2017 at 5:00 pm at LaSalle Process Servers, LP, 105 W. Madison Street, Suite
1306, Chicago, Illinois 60602.  The subpoena was issued by plaintiff in the above captioned
matter.

The subpoena is addressed to "Accreditation Council on Graduate Medical
Education, Attn: Louise King, MS, Executive Director, Residency Review Committee for
Urology, 515 N. State St., Ste. 2000, Chicago, IL 60654.  According to the subpoena, the
time period is unlimited.

ACGME is not a party to the lawsuit underlying the subpoena.  This letter of written
objection to the subpoena is sent to you pursuant to Rule 45(c)(2)(B), Federal Rules of Civil
Procedure.

ACGME is a not for profit corporation organized under the laws of the State of
Illinois, and it is headquartered in Chicago, Illinois.  According to the ACGME *2015/2016
Data Resource Book*, ACGME accredits 9,977 programs in graduate medical education in the
United States, its territories and possessions. These include the "Temple University Hospital
Program" (ACGME Program No. 4804121132) sponsored by the Lewis Katz School of

August 29, 2017

Medicine at Temple University, the current program director of which is Jack H. Mydlo, MD, according to information submitted to ACGME by the program.

Documents within the scope of the subpoena are
(a) documents submitted by the plaintiff to ACGME or submitted by ACGME to plaintiff relating to complaints by plaintiff against the Temple residency program;
(b) documents internal to ACGME relating to plaintiff's complaints against the Temple residency program (including attorney-client privileged documents);
(c) electronic case log data submitted to ACGME by plaintiff while a resident physician in the Temple residency program;
(d) electronic case log data submitted by plaintiff to ACGME while a resident physician in an Ohio residency program;
(e) electronic resident survey responses submitted by plaintiff (ACGME could not identify any response as attributable to plaintiff); and
(f) an electronic record addressing the status of plaintiff in the Temple residency program and submitted to ACGME by the Temple residency program.

1.     ACGME objects to the subpoena because compliance with the subpoena would subject ACGME to undue burden in violation of Rule 45(c)(1), particularly insofar as the plaintiff, who issued the subpoena, or Temple University Hospital and/or Dr. Mydlo, parties to the underlying lawsuit, likely have, or have access to, most of the same documents in the possession of ACGME (plaintiff – (a) above; Temple University Hospital and/or Dr. Mydlo – (c), (d), and (f) above).  See, Rules 45(c)(1) and 26(b)(2)(C), Federal Rules of Civil Procedure.  "If the material sought by subpoena is readily available . . .  from a party to the action, obtaining it through subpoena on a nonparty will often create undue burden." Moore's Federal Practice § 45.32 (Third Ed.).

2.     ACGME objects to the subpoena because compliance with the subpoena would subject ACGME to undue burden or cost in violation of Rules 45(c)(1) and 26(b)(2)(B), particularly insofar as requested information includes electronically stored information, on backup media or otherwise, and not reasonably accessible because of undue burden or cost.  See, Rules 45(c)(1) and 26(b)(2)(B), Federal Rules of Civil Procedure.

3.     ACGME objects to the subpoena because it requests information not admissible at trial and not reasonably calculated to lead to the discovery of admissible evidence, in violation of Rule 26(b)(1).  See, Rule 26(b)(1), Federal Rules of Civil Procedure

4.     ACGME objects to the subpoena because it "requires disclosure of privileged or other protected matter" in violation of Rule 45(c)(3)(A)(iii).  ACGME maintains the information within the scope of the subpoena as confidential, and it objects to producing documents responsive to the subpoena and maintained as confidential because the documents are

(a)     privileged under Rule 501 of the Federal Rules of Evidence;

2

August 29, 2017

     (b)     privileged under the civil and criminal non-disclosure provisions of the Illinois peer review/quality assurance statute, 735 ILCS 5/8-2101 et seq.; *Niven v. Siquiera*, 109 Ill. 2d 357 (1995);

     (c)     privileged under the federal common law doctrine of self-critical analysis;

     (d)     maintained as confidential under the ACGME confidentiality policy;

     (e)     attorney-client privileged; and

     (f)     maintained as confidential under HIPAA (case logs).

See, Rule 45(c)(3)(A)(iii), Federal Rules of Civil Procedure.

Moreover, protecting these documents from disclosure promotes and facilitates the effectiveness of residency program accreditation, which in turn improves (1) the quality of resident physician education, (2) the quality of care rendered to patients by resident physicians, and (3) the quality of care rendered by resident physicians upon completion of the residency program.

Rule 501 of the Federal Rules of Evidence permits a federal court to recognize privileges under "the principals of the common law as they may be interpreted by the courts of the United States in light of reason and experience." The United States Supreme Court has stated that an evidentiary privilege should not be recognized or applied unless it "promotes sufficiently important interests to outweigh the need for probative evidence." *Jaffee v. Redmond*, 518 U.S. 1 (1996), citing *Trammel v. United States*, 445 U.S. 40 (1980).

The recognition and application of the privilege protecting documents created and maintained during the ACGME accreditation process would, in fact, promote sufficiently important interests to outweigh the need for probative evidence.

Intrinsic to private accreditation is the promotion of candor within its process, which includes constructive criticism that leads to improvement in the educational quality of a residency program. Maintaining confidentiality within the accreditation process promotes candor. Personnel within residency programs are more forthright and candid because they trust (a) that the information they disclose to ACGME during the accreditation process will be used solely within that process and will not be otherwise disclosed, and (b) that the candid evaluation sent by ACGME to the residency program for the purpose of fostering improvement in the program will also not be disclosed outside the process. For the same reasons, complainants are more forthright and candid.

As a non-government entity, ACGME has no power to compel residency programs seeking accreditation to submit complete and accurate information, but must rely on programs that apply for accreditation to provide information willingly. Assurance of confidentiality allows programs and others to provide sensitive and sometimes proprietary information without fear that it will be disclosed outside the accreditation process.

Disclosure of accreditation records outside the accreditation process would have a "chilling effect" on ACGME's ability to receive full and frank information and would ultimately reduce confidence in the quality assurance aspect of accreditation. Lack of access

3

August 29, 2017

to full information (because it is not protected and confidential) would hinder the ability of ACGME to do its job, which is to foster the provision of physician training consistent with national standards.

The public relies on ACGME accreditation decisions and the ability of ACGME to make those decisions. For example,

- By law, virtually all state medical licensing agencies (a) maintain as a condition of physician licensure the completion of one or more years in a residency program that is accredited by ACGME, and (b) grant training licenses to resident physicians who are participating in residency programs that are accredited by the ACGME, and who have not yet attained full medical licensure.

- By law, the Centers for Medicare & Medicaid Services makes Medicare graduate medical education payments to institutions sponsoring residency programs that are accredited by ACGME.

- The Educational Commission for Foreign Medical Graduates is authorized by the United States Department of State to sponsor foreign national physicians as Exchange Visitors in ACGME accredited residency programs.

- By law, many states and other government entities require completion of one or more years of training in a residency program that is accredited by ACGME for eligibility to serve in government or state regulated positions, i.e. county medical examiner, etc.

- Many professional medical certification organizations require completion of a residency program accredited by ACGME as one qualification for certification.

- Many hospitals use the completion of all or part of a residency program accredited by ACGME as one prerequisite to the grant of hospital privileges.

All of this evidences an overwhelming public interest in providing residency program sponsors, complainants and ACGME with the necessary confidential context in which to evaluate the quality of clinical training programs for our nation's physicians.

ACGME's confining its use and disclosure of the requested documents within its accreditation process is intrinsic to that process and necessary to the maintenance of the accreditation function of ACGME.

5. ACGME objects to the subpoena because compliance with the subpoena would subject ACGME to undue burden in violation of Rule 45(c)(1), particularly insofar as,

(a) the parties to the underlying lawsuit likely have most of the same responsive documents in the possession of ACGME;

(b) requested information includes electronically stored information, on backup media or otherwise, and not reasonably accessible because of undue burden or cost;

4

August 29, 2017

(c)     requested information is privileged and confidential

(d)     requested information (case logs) is maintained as confidential under HIPAA;

(e)     protecting the privileged and confidential documents from disclosure promotes and facilitates the effectiveness of residency program accreditation, which in turn improves (i) the quality of resident physician education, (ii) the quality of care rendered to patients by resident physicians, and (iii) the quality of care rendered by resident physicians upon completion of the residency program;

(f)     disclosure of the privileges and confidential accreditation records outside the accreditation process would have a "chilling effect" on ACGME's ability to receive full and frank information and would ultimately reduce confidence in the quality assurance aspect of accreditation; and

(g)     lack of access to full information (because it is not protected and confidential) would hinder the ability of ACGME to do its job, which is to foster the provision of physician training consistent with national standards.

See, Rules 45(c)(1) and 26(b)(2)(C), Federal Rules of Civil Procedure.  See also, *Northwestern Memorial Hospital v. Ashcroft*, 362 F.3d 923 (7th Cir. 2004).

6.     The subpoena is issued by the plaintiff in the underlying lawsuit.  ACGME possesses documents submitted by plaintiff to ACGME and by ACGME to plaintiff.  If plaintiff does not already possess these documents, ACGME will produce these to plaintiff and to the parties to the underlying lawsuit, as ACGME will consider plaintiff's issuance of a subpoena as his waiver to produce these documents to the other parties to the lawsuit.

I am available to discuss this subpoena at your convenience.

Very truly yours,

Douglas Carlson

Douglas Carlson LLC
Counsel for ACGME

5

# EXHIBIT 3

# HUGHES • ARRELL • KINCHEN • LLP

ATTORNEYS AT LAW

Houston Office
1221 McKINNEY, SUITE 3150
HOUSTON, TEXAS 77010

mdowney@hakllp.com

Dallas Office
1910 PACIFIC AVE, SUITE 15650
DALLAS, TEXAS 75201

DIRECT PHONE: (214) 764-7279
FACSIMILE: (713) 942-2266

September 1, 2017

***Via Email:***
carlson@douglascarlsonlaw.com
Douglas R. Carlson
225 West Wacker Dr., Suite 3000
Chicago, IL 60606

Re:    Civil Action No. 2:15-cv-05977-JP; *Rao S. Mandalapu, M.D. v. Temple University Hospital, Inc. et al.*

Dear Mr. Carlson,

We are withdrawing the subpoena issued and served on August 11, 2017. I did not review closely enough the requested documents and failed to notice that the request was not changed to what it should have requested, which should have been:

"Any and all the complaints, against the Temple University Hospital urology residency program and/or Dr. Jack H. Mydlo, Dr. Richard E. Greenburg, Dr. David Y.T. Chen, regarding discrimination, retaliation or harassment by any resident or participant in a residency program conducted by Temple University Hospital."

I would like to issue a new subpoena to the ACGME to reflect this corrected request.

Yours Truly,

HUGHES ARRELL KINCHEN, LLP

Mark Downey

Cc:    Michael Fortunato (*via email*)

# EXHIBIT 4

-------- Original message --------
From: Doug Carlson <carlson@dougcarlsonlaw.com>
Date: 9/29/17 12:46 PM (GMT-07:00)
To: Mark Downey <mdowney@hakllp.com>
Cc: "'JRoberts@rubinfortunato.com'" <JRoberts@rubinfortunato.com>
Subject: Mandalapu Subpoena -


Mr. Downey,

Per our telephone discussion of Tuesday of this week, attached are ACGME001 – ACGME012 in partial response to your subpoena.

Also per our discussion, ACGME received a complaint in 2016 from someone other than Dr. Mandalapu.  Temple University Hospital, a defendant in the underlying action, should have materials relating to the complaint.  During our discussion, I suggested that Rule 45, F.R.Civ.P. requires you to seek these materials from Temple University Hospital before burdening a third party subpoena respondent (ACGME) with a subpoena response.  I understand that you are going to do that, and that you may or may not return to ACGME.

Although we did not discuss this, it is my understanding that objections raised by ACGME in its letter response to your withdrawn subpoena remain applicable to the current subpoena, should you in fact return to ACGME.

Douglas Carlson

# EXHIBIT 5

**Roberts, Jason K.**

| | |
|---|---|
| **From:** | Mark Downey <mdowney@hakllp.com> |
| **Sent:** | Wednesday, October 25, 2017 5:18 PM |
| **To:** | Doug Carlson |
| **Cc:** | Roberts, Jason K. |
| **Subject:** | Re: Mandalapu Subpoena - |

Mr Carlson

We are going to need to get documents regarding the other complaint against Temple from you per our subpoena.

Please provide at your earliest convenience.

Thank you.

## MARK D. DOWNEY
## Board Certified in Labor & Employment Law
## By the Texas Board of Legal Specialization

## HUGHES ARRELL KINCHEN, LLP

Direct:  (214) 764-7279

Mobile: (214) 912-6746

Firm:    (713) 942-2255

-------- Original message --------
From: Doug Carlson <carlson@dougcarlsonlaw.com>
Date: 9/29/17 12:46 PM (GMT-07:00)
To: Mark Downey <mdowney@hakllp.com>
Cc: "'JRoberts@rubinfortunato.com'" <JRoberts@rubinfortunato.com>
Subject: Mandalapu Subpoena -

Mr. Downey,

Per our telephone discussion of Tuesday of this week, attached are ACGME001 – ACGME012 in partial response to your subpoena.

Also per our discussion, ACGME received a complaint in 2016 from someone other than Dr. Mandalapu.  Temple University Hospital, a defendant in the underlying action, should have materials relating to the complaint.  During our discussion, I suggested that Rule 45, F.R.Civ.P. requires you to seek these materials from Temple University Hospital before burdening a third party subpoena respondent (ACGME) with a subpoena response.  I understand that you are going to do that, and that you may or may not return to ACGME.

Although we did not discuss this, it is my understanding that objections raised by ACGME in its letter response to your withdrawn subpoena remain applicable to the current subpoena, should you in fact return to ACGME.

Douglas Carlson

# EXHIBIT 6

## Roberts, Jason K.

| | |
|---|---|
| **From:** | Roberts, Jason K. |
| **Sent:** | Wednesday, October 25, 2017 5:39 PM |
| **To:** | 'Mark Downey'; Doug Carlson |
| **Cc:** | Fortunato, Michael J. |
| **Subject:** | RE: Mandalapu Subpoena - |

Mark –

We are going to object to the relevancy of a 2016 complaint given that Dr. Mandalapu had been out of the program for 4 years at that point.  Our discovery responses covered around the time Dr. Mandalapu was at Temple.

I am available to discuss.

Jason

<u>Jason K. Roberts</u> | Shareholder
Office: 610-408-2056 | Mobile: 862-207-1221
10 South Leopard Road | Paoli, PA 19301
JRoberts@rubinfortunato.com | www.RubinFortunato.com

 RubinFortunato

Rubin, Fortunato & Harbison P.C. intends that this electronic message be used exclusively by the individual or entity to which it is addressed. This message may contain information that is privileged, confidential, and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering this message to the intended recipient, be aware that any disclosure, dissemination, distribution, or copying of this communication, or the use of its contents, is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at (610) 408-2000 and delete the original message from your e-mail system.

**From:** Mark Downey [mailto:mdowney@hakllp.com]
**Sent:** Wednesday, October 25, 2017 5:18 PM
**To:** Doug Carlson <carlson@dougcarlsonlaw.com>
**Cc:** Roberts, Jason K. <JRoberts@rubinfortunato.com>
**Subject:** Re: Mandalapu Subpoena -

Mr Carlson

We are going to need to get documents regarding the other complaint against Temple from you per our subpoena.

Please provide at your earliest convenience.

Thank you.

**MARK D. DOWNEY**
Board Certified in Labor & Employment Law
By the Texas Board of Legal Specialization


**HUGHES ARRELL KINCHEN, LLP**


Direct:   (214) 764-7279

Mobile:  (214) 912-6746

Firm:    (713) 942-2255


-------- Original message --------
From: Doug Carlson <carlson@dougcarlsonlaw.com>
Date: 9/29/17 12:46 PM (GMT-07:00)
To: Mark Downey <mdowney@hakllp.com>
Cc: "JRoberts@rubinfortunato.com'" <JRoberts@rubinfortunato.com>
Subject: Mandalapu Subpoena -


Mr. Downey,

Per our telephone discussion of Tuesday of this week, attached are ACGME001 – ACGME012 in partial response to your subpoena.

Also per our discussion, ACGME received a complaint in 2016 from someone other than Dr. Mandalapu.  Temple University Hospital, a defendant in the underlying action, should have materials relating to the complaint.  During our discussion, I suggested that Rule 45, F.R.Civ.P. requires you to seek these materials from Temple University Hospital before burdening a third party subpoena respondent (ACGME) with a subpoena response.  I understand that you are going to do that, and that you may or may not return to ACGME.

Although we did not discuss this, it is my understanding that objections raised by ACGME in its letter response to your withdrawn subpoena remain applicable to the current subpoena, should you in fact return to ACGME.

Douglas Carlson

## CERTIFICATE OF SERVICE

I, LaTi W. Spence, Esquire, hereby certify that a true and correct copy of the foregoing

*Motion to Quash* was filed via the Court's ECF system and served as follows:

*Via ECF and Email*
Kenneth J. Zoldan, Esquire
Zoldan Associates, LLC
Two Bala Plaza, Suite 300
Bala Cynwyd, PA  19004


Mark D. Downey, Esquire
Hughes Arrell Kinchen LLP
1910 Pacific Avenue, Suite 15650
Dallas, TX  75201


Samy K. Khalil, Esquire
Hughes Arrell Kinchen LLP
1221 McKinney, Suite 3150
Houston, TX  77010

*Attorneys for Plaintiff*

Dated: November 6, 2017                    By: _____
                                               LaTi W. Spence

10